UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TOMMIE TRAMEL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No: 4:20CV29 HEA |
| | ) | |
| SHAWN SUYDAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings, [Doc. No. 32]. Plaintiffs oppose the Motion. For the reasons set forth below, the Motion is granted in part and denied in part.

### Facts and Background

Plaintiffs filed this action in the Circuit Court of the County of Maries, Missouri on December 3, 2019. Defendants removed it to this Court on January 8, 2020 based on the Court's federal question jurisdiction. 28 U.S.C. §1331.

Plaintiffs' Petition alleges the following:

On May 11, 2016, Defendant Suydam (Suydam) was employed as a police officer by Defendant City of Belle. Suydam conducted a traffic stop of Plaintiff[1]

---

[1] The Petition does not specify which Plaintiff was stopped. The Court assumes, because of the use of masculine pronouns, Plaintiff Tommie Tramel was the individual involved in the traffic stop.

for a failure to properly signal a left-hand turn. Suydam spoke with Plaintiff and detected a moderate smell of an intoxicating beverage emanating from the vehicle Plaintiff was driving.  Suydam requested Plaintiff submit to a portable breath test. Plaintiff requested to consult with counsel before answering or being further questioned. Suydam returned to his squad car to call his supervising officer, Brian Brennan.  After consulting with his supervising officer, Suydam returned to Plaintiff's vehicle with the intent to place Plaintiff under arrest.  While Suydam was at his patrol car, Plaintiff called the Chief of Belle Police from his cell phone.

Upon returning to Plaintiff's window, Plaintiff requested Suydam speak with the Police Chief and handed Suydam Plaintiff's cell phone.

Suydam was visibly upset. He briefly put the phone to his ear before becoming enraged and throwing Plaintiff's phone on the ground, breaking it.

Suydam then reached through Plaintiff's open car window and unlocked the door.  He then drew his taser with one hand, opening the car door with the other. Plaintiff grabbed the door with his left hand and closed it.  Suydam holstered his taser and took out his handcuffs.  He handcuffed Plaintiff's left wrist tightly and proceeded to use the handcuffs as leverage to physically pull Plaintiff out of his vehicle by his wrist through "pain compliance."

After Suydam dragged Plaintiff from his vehicle, he placed Plaintiff's left wrist into a joint-lock for control over Plaintiff.  Suydam then put Plaintiff's left

arm into a control joint lock known as an "arm bar."  Suydam the forced Plaintiff to the ground.

While on the ground, Suydam forced Plaintiff's right arm and wrist into being handcuffed behind Plaintiff's back with his left wrist.  Suydam stuck his knee and all of his weight on Plaintiff's back.

Plaintiff suffers from a form of polio that has caused his right arm to be shorter, less developed, and more difficult to use than his left arm. Plaintiff's condition made it physically difficult or impossible to handcuff his hands behind his back without serious injury.

Suydam used significant force to pull and twist Plaintiff's right arm behind his back such that he caused a displaced fracture of the humerus bone of Plaintiff's right arm.  The arm required surgery to place a metal plate with seven screws to hold his right arm together. Plaintiff also suffered an injury to his back.

Although the bone in his right arm has healed, Plaintiff suffers significantly diminished functional use of his right arm and hand than he enjoyed prior to having it broken by Suydam.  The significant loss of functionality of Plaintiff's right arm and hand is permanent. The injury to Plaintiff's back is also permanent.

Plaintiffs seek recovery based on: violation of the Fourth Amendment right to be free from unreasonable search and seizure under 42 U.S.C. § 1983, (Count I); violation of the Fourth Amendment right to be free from unreasonable seizure

under 42 U.S.C. § 1983, excessive force, (Count II); First Amendment violation

actionable under § 1983, (Count III); Fifth Amendment violation actionable under

§ 1983, (Count IV); Excessive force actionable under § 1983 (policy of failure to

train), (Count V); Loss of Consortium, (Count VI) brought by Plaintiff Claudia

Tramel. Counts I-IV are brought against Defendant Suydam in his individual

capacity; Count V is brought against the City of Belle.

Defendants now move for judgment on the pleadings.

## Standard of Review

Judgment on the pleadings is proper when there are no issues of material fact

to be resolved and the moving party is entitled to judgment as a matter of law.

*Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002). When evaluating the

merits of a motion for judgment on the pleadings, the district court applies the

same legal standard that applies to a motion to dismiss. *See* Fed. R. Civ. P.

12(b)(6); *see also Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

To survive a motion for judgment on the pleadings, the complaint must contain

sufficient factual allegations to state a plausible claim for relief. *See Clemons v.*

*Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). A district court accepts as true all

facts pleaded by the nonmoving party and draws all reasonable inferences from the

pleadings in favor of that party. *Corwin v. City of Independence, Mo.*, 829 F.3d

695, 699 (8th Cir. 2016). Without more, merely reciting the elements of a cause of

action is insufficient, and legal conclusions asserted in the complaint are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When deciding a motion for judgment on the pleadings, a district court refrains from considering matters beyond the pleadings, other than certain public records and "materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings." *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013) (internal quotation marks omitted).

## Discussion

**Statute of Limitations**

Defendants first argue that Plaintiffs' Counts I through IV against Defendant Suydam are barred by the statute of limitations, citing Mo.Rev.Stat. § 516.130. This statute, however, applies to actions against officers doing an act in his <u>official</u> capacity.  These counts are specifically brought against Suydam in his individual capacity.

There is no statute of limitations contained within 42 U.S.C. § 1983; however, the United States Supreme Court "has held that § 1983 claims accruing within a particular state should be governed by that state's statute of limitations governing personal-injury claims." *Walker v. Barrett*, 650 F.3d 1198, 1205 (8th Cir. 2011). Thus, for cases arising in Missouri, the five-year statute of limitations for

personal injury actions found in Mo. Rev. Stat. § 516.120(4) applies to § 1983 actions. *Sulik v. Taney Cty., Mo.*, 393 F.3d 765, 767 (8th Cir. 2005). While the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint under 28 U.S.C. § 1915 when it is apparent the statute of limitations has expired. *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992).

In Missouri, the statute of limitations for personal injury actions begins when the damage is capable of becoming known, not when the injury is actually discovered. *See Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 580 (Mo. 2006); and *Chem. Workers Basic Union, Local No. 1744 v. Arnold Sav. Bank*, 411 S.W.2d 159, 163-64 (Mo. 1966).

Defendants' motion based on the statute of limitations is denied.

**Failure to State Claims and Qualified Immunity**

Defendants also argue Counts I through V are barred because Plaintiff fails to state claims and Defendant Suydam is entitled to qualified immunity.  The Court will address each count in turn.

**Count I**

Count I is brought against Suydam in his individual capacity for an alleged violation of Plaintiff Tommie's Fourth Amendment right to be free from unreasonable search and seizure pursuant to 42 U.S.C. § 1983.  Initially, this count

fails to allege any facts regarding a search of any kind.  The count alleges that
Plaintiff handed his cell phone to Suydam in an effort to get Suydam to speak with
the Chief of Police for the City of Belle, Missouri, whom Plaintiff had just called.
Under the judgment on the pleadings standards articulated above, the Court
assumes the truth of these allegations and construes them and all reasonable
inferences in the light most favorable to Plaintiffs.

Defendant Suydam asserts he is entitled to qualified immunity on Plaintiff's
§ 1983 claims under the Fourth Amendment. Qualified immunity protects
governmental officials from civil liability if "their conduct does not violate clearly
established statutory or constitutional rights of which a reasonable person would
have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Officials are
entitled to qualified immunity unless a plaintiff can show "(1) a deprivation of a
constitutional right, and (2) that the right was clearly established at the time of the
deprivation." *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th Cir. 2021). A
court may address either inquiry first. *Id*.

"To be clearly established, the 'contours of the right must be sufficiently
clear that a reasonable official would [have understood] that what he is doing
violates that right." *Quraishi v. St. Charles Cty., Mo.*, 986 F.3d 831, 835 (8th Cir.
2021) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The law, at the
time of the alleged violation, must give officials " 'fair warning' their conduct was

unlawful." *Id*. (quoting *Sisney v. Reisch*, 674 F.3d 839, 845 (8th Cir. 2012)). Although there may be the "rare obvious case" where it is clear the officer's conduct is unlawful without precedent addressing a similar circumstance, most cases will require precedent, controlling authority, or a robust consensus of cases of persuasive authority finding the conduct at issue is unconstitutional. *Id*.

The Fourth Amendment states, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."[63] U.S. Const. amend. IV. "[R]easonableness is always the touchstone of Fourth Amendment analysis." *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2186 (2016) (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) ). "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.' " *Stuart*, 547 U.S. at 404 (emphasis and alteration in original) (quoting Scott v. United States, 436 U.S. 128, 138 (1978) ).

Consent to search by a person having authority over the property searched is an exception to the warrant requirement. See, e.g., *Fernandez v. California*, 571 U.S. 292, 298 (2014). "Consent searches are part of the standard investigatory techniques of law enforcement agencies and are a constitutionally permissible and wholly legitimate aspect of effective police activity." *Id*. (internal quotation marks

omitted) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 228, 231-32 (1973) ). "A warrantless consent search is reasonable and thus consistent with the Fourth Amendment irrespective of the availability of a warrant." *Fernandez*, 571 U.S. at 307.

Count I fails to set forth a deprivation of a constitutional right.  The allegations clearly establish there was no seizure of Plaintiff's cell phone. Rather, Plaintiff voluntarily consented to Suydam's taking the phone when Plaintiff handed it to Suydam and asked Suydam to speak to the police chief.  While Plaintiff argues that Suydam's subsequent acts of throwing the phone and destroying it are sufficient to state a claim for an unreasonable seizure, the facts alleged do not set forth a Fourth Amendment Claim for a seizure.  While it very well may be that Plaintiff could have stated a claim for a violation of his due process rights for an intentional destruction of personal property[2], the Petition does not so allege.  Plaintiff voluntarily consented to the seizure of his phone. Therefore, Defendant Suydam is entitled to qualified immunity on Count I as

---

[2] The Fourteenth Amendment Due Process Clause provides that "[n]o State...shall...deprive any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citations omitted). Due process is a flexible concept, requiring only "such procedural protections as the particular situation demands." *Id.* at 334 (internal quotation marks and citation omitted). "The circumstances of the [alleged] deprivation dictate what procedures are necessary to satisfy procedural due process." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 818 (8th Cir. 2011) (internal quotation marks and citation omitted).

Plaintiff has failed to show a violation of his Fourth Amendment right to be free from unreasonable search and seizure.

**Count II**

Plaintiff alleges Suydam violated his Fourth Amendment right to be free from excessive force through: reaching through his window, unlocking the car, drawing his taser and opening the door, handcuffing Plaintiff's left hand and physically pulling Plaintiff out of the car by his wrist, placing Plaintiff's left wrist into a joint-lock for control over him, putting Plaintiff's left arm into an arm bar, forcing him to the ground, forcing Plaintiff's right arm into being handcuffed behind Plaintiff's back with his left wrist, and sticking his knee and all of his weight on Plaintiff's back . Defendant argues he is entitled to qualified immunity for these acts because the amount of force used was reasonable under the particular circumstances, citing *Kohorst v.* Smith, 968 F.3d 871 (8th Cir. 2020).

Courts use the reasonableness standard to analyze excessive force claims in the context of the Fourth Amendment. *Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006). The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, 'the test is whether the amount of force used was objectively reasonable under the particular circumstances.' " *Id*. (citing *Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir. 2004)). "The determination whether the force used to effect a seizure was reasonable ultimately requires a case-specific balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.'" *Chambers v. Pennycook*, 641 F.3d. 898, 905-06 (8th Cir. 2011) (*Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Relevant considerations include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (1989).

> When evaluating a Fourth Amendment excessive force claim under § 1983, we consider "whether the amount of force used was objectively reasonable under the particular circumstances." *Michael v. Trevena*, 899 F.3d 528, 532 (8th Cir. 2018). We evaluate the reasonableness of the force used from the perspective of a reasonable officer on the scene, not with the benefit of hindsight. *Id*. This evaluation entails careful consideration of the case's particular facts and circumstances, including: "(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). We may also consider the result of the use of force. *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003).

The use of force is least justified against a nonviolent misdemeanant who does not flee or actively resist arrest and poses little threat to officers or the public. Jackson, 944 F.3d at 711. "When a suspect is passively resistant, somewhat more force may reasonably be required." *Wertish v. Krueger*, 433 F.3d 1062, 1066–67 (8th Cir. 2006). The failure to follow police instruction may constitute passive resistance. See *Ehlers*, 846 F.3d at 1011; see also *Jackson*, 944 F.3d at 711. Whether a suspect's resistance is intentional does not impact how a reasonable officer would interpret the suspect's behavior. *Ehlers,* 846 F.3d at 1011. An officer is entitled to use the force necessary to effect an arrest where a suspect "at least appears to be resisting." *Id*. We have upheld the use of force where a suspect is non-compliant and resists arrest or ignores commands from law enforcement. See *Jackson*, 944 F.3d at 711.

*Kohorst v. Smith*, 968 F.3d 871, 876–77 (8th Cir. 2020).

Viewing the facts in the light most favorable to the Plaintiff, the use of such force against him was not objectively reasonable. When nothing in the pleadings establishes that Plaintiff was resisting any commands by Suydam; no commands were made to Plaintiff to exit the vehicle.  And there is no indication Plaintiff posed an immediate threat to Suydam. Additionally, the alleged crime he was being detained for was initially a traffic violation-failure to properly signal a left-hand turn, which may or may not have resulted in a DUI charge because of the moderate smell of alcohol coming from Plaintiff's car. *See Brown*, 574 F.3d at 499. Even if Plaintiff's request to speak to the chief of police directed at Suydam were considered argumentative, they did not amount to resisting arrest; "the use of any force by officers simply because a suspect is argumentative ... is not to be condoned." *Bauer*, 713 F.2d at 412.

Plaintiff's allegations are sufficient to state a claim that Defendant violated Plaintiff's right to be free from excessive force.

But the inquiry does not end there, to overcome qualified immunity, Plaintiff must present facts to show not only (1) that the officer[s'] conduct violated a constitutional right, but also (2) that the right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). In May 2016, it was clearly established that the alleged force under these circumstances may not be reasonable. In *Johnson v. Carroll*, the Eighth Circuit found that it was clearly established that "it was unlawful to throw to the ground and mace a nonviolent, suspected misdemeanant who was not fleeing or herself resisting arrest, who posed little or no threat to anyone's safety, [and] who never received verbal commands to remove herself...." *Johnson v. Carroll*, 658 F.3d 819, 828 (8th Cir. 2011). This case shows that Plaintiff's right to be free from excessive force was clearly established.  Defendant's motion is denied as to Count II.

## Count III

Plaintiff claims Suydam's actions were in retaliation for exercising his First Amendment right to protected speech.  Contained within this count are Plaintiff's allegations that the phone call was a substantial or motivating factor in Defendant's decision to destroy Plaintiff's phone and engage in excessive force.

The First Amendment prohibits government officials from taking retaliatory actions against individuals for speaking out. *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014).

> To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.

*Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014). (internal quotations and citations omitted). "Under the third prong, a plaintiff must show that the retaliatory motive was a 'substantial factor' or 'but-for cause' of the adverse action. In other words, the plaintiff must show he was 'singled out because of [his] exercise of constitutional rights.' " *Id.* (internal citations omitted).

The Petition satisfies the pleading requirements of a retaliatory claim. Plaintiff claims that he was exercising his First Amendment rights in calling the chief of police, Suydam destroyed his phone and used excessive force on Plaintiff, an individual whose right arm is deformed, and Suydam's action were motivated by the call.  Clearly, as stated in *Peterson*, Plaintiff's rights were clearly established at the time of Suydam's actions.  Defendant's Motion for Judgment as to Count III is denied.

**Count IV**

Although Count IV states that it is a claim for a Fifth Amendment violation, Plaintiff does not allege Suydam's request to submit to a portable breath test violated his Fifth Amendment right to be free from self-incrimination. Instead, Plaintiff claims that the request that an attorney be present for any questioning was a substantial or motivating factor in Suydam's decision to break his cell phone and use excessive force, essentially stating a retaliation claim.  This claim must fail as it fails to allege Plaintiff required to engage in protected activity, i.e., refusing to answer questions.  The Petition does not set forth any further inquiries regarding the breath test and/or Plaintiff's refusal.  Count IV will be dismissed for failure to state a claim.

**Count V**

Count V is brought against the City of Belle for an alleged failure to train. "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (internal quotations omitted). The City argues plaintiff fails to establish *Monell* liability under any of the asserted theories.

To allege a § 1983 claim against the City for a failure to train or supervise, plaintiff must plead facts sufficient to show the City's training and supervision

practices were inadequate, the City was deliberately indifferent to the rights of others in adopting these practices, the City's failure to train and supervise was the result of deliberate and conscious choices, and the alleged deficiencies caused plaintiff's constitutional deprivation. *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013); *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013).

Specifically, Plaintiff alleges the policies of the City were not adequate to prevent excessive and unnecessary use of force by its employees and/or to train its officers to handle usual and recurring situations with which they must deal, the City was deliberately indifferent to the obvious consequences of its failure to train its police officer adequately, and specifically, the city's policies completely failed to instruct its officers in de-escalation; the proper use of pain and joint control techniques; and the proper manner to handle passive resistance from a disabled and other non-threatening persons.

Plaintiff's allegations are conclusory. They fail to set out what the policies were *vis a vis* training officers in de-escalation.  The allegations fail to set out anything to show indifference to obvious consequences. Although the title of Count V is "excessive force," the Petition fails to allege what constitutional right has been violated.  Nothing in Count V relates Defendant Suydam's actions to an alleged deficit in his training.  Count V will be dismissed.

**Conclusion**

After careful consideration of the motion and the record before the Court, Count I fails to allege a seizure. Count II states a claim for a Fourth Amendment excessive force claim.  Count III sets forth a First Amendment retaliation claim. Count IV fails to state a claim for a violation of the Fifth Amendment retaliation claim.  Count V fails to set forth a claim for municipal liability under a policy, custom or failure to train.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Judgment on the Pleadings, [Doc. No. 32], is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Defendants' Motion for Judgment on the Pleadings, [Doc. No. 32] as to counts II and III is denied

**IT IS FURTHER ORDERED** that Judgement on the Pleadings is entered on Count I.

**IT IS FURTHER ORDERED** that Counts IV and V are dismissed.

Dated this 11th day of August 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE